141038 Infection Prevention Technologies against Lumalier Corporation. Mr. Triggs. May it please the Court, my name is John Triggs, along with my partner Ryan Levy. We represent Lumalier on the appeal here this morning. I have two things that I'll cover. One will be the disclaimer issue and second, the measuring issue. Let me jump right to this disclaimer issue because obviously I think it's the most important and interesting aspect of the case. The argument that we're making to you today requires context. That's the first thing whenever there's a disclaimer. And when you first read that single sentence that says negates, by itself, you're not sure what it means. But when you work your way through the file history and you start at the beginning of where that comes from, I think you begin to see the possibility for at least three different interpretations for that statement, one of which I think is the most likely. So where do you begin? You begin with the examiner's rejection. Now the examiner's rejection is interesting because if you studied Owenson, what you quickly, I think, determined is the examiner's probably got it wrong when he says the probe or the single point, probably a better word, is on the outside of the device. That is, I would submit, and the applicant thought not correct. When you look at Cimino, you will see that he's talking about that single point of information, that probe being, I think, located internally in that air chamber because it's somehow able to regulate fan speed. We don't know how. We don't know why. It's really quite undisclosed. And the applicant, if you look at the file history, points that out and says, look, Owenson's not very clear about what this thing is or even where it's located, but I believe it's internal. It's internal to the device. And that leads him to make the statement that's claimed to be disclaimer. And I think the important thing here to remember about that statement is it's subject to a lot of different possibilities. The one that I think is most likely is that what he's telling the examiner. Didn't the patentee during prosecution state that reflected radiation meant reflected radiation and not reflected and direct radiation? Yes and no, Your Honor. No as to claims one and three. Those claims, claim one, by the way, never changed. The new claims, five through 20, and those two independent claims, five and 14, all talk about only reflected radiation. Those are the claims that have that word. Those are the claims that are added. And that's the mistake I would submit the trial judge made below by importing the conversation with the patent office about claims five through 20 into claims one and three. But if you have a disavow as to one or more claims, but not all of them, doesn't that have negative implication on your equivalence argument? Doesn't it affect the entire patent for purposes of equivalence? It can, Your Honor, but I would argue that the difference between the doctrine of disclaimer and estoppel is really blurred. I think I would answer both of those issues the same way. This is the nub of my argument. If you look at what happened with claim one and three, and it's very interesting, when he gets the rejection and he makes the statement we've all been talking about, what does he do? He does not amend claim one. It never changes. What he does is he imports limitations from claim one into claim three. And what they basically are are multiple points external to the device. So that leads you to, I think, understand one of the things he could have been telling the examiner, and I'm not telling you his statement was clear or what it means is clear, but certainly the most logical one is what he's telling the examiner is a single point inside the air chamber cannot provide relative values because it only provides you with a single piece of information, and that doesn't practice the art. The art here, the invention, the novelty is the ability to take a series of values and make a relativity judgment about what's the darkest spot in the room. Once you know that, you process that data, you have an algorithm, and you know what you need to know to basically kill that dark spot. Don't you do that, and isn't the point of the invention here that it does that using reflected radiation, and that's what you use to get over the prior art of OSIN? And aren't those two statements that you brought up one, my colleague brought up the other, those are the key distinctions here, that OSIN doesn't measure reflected radiation? Right, and I don't disagree with that. It doesn't measure. But remember, and I think we pointed this out throughout the papers, that that doesn't mean you can't have other radiation hitting that single point in the patent, because that direct light is, you're correct, of no consequence. All that counts here is the ability with your microprocessor to determine that value for reflected radiation. You don't care, and this also slides into the claim differentiation argument, because you've got claims that talk about only receiving reflected radiation, that's five through 20, and you've got claims one and three, the two independent claims, that talk about receiving radiation. And that could be, as IPT said in their... I think that the point is, your invention, whether you talk about receiving or measuring, the reason you got it patented, or tried to get it, I think, got it patented, was that you disclaimed any kind of measurement of total radiation, and that your improvement was that it received only reflected radiation, which is what gets you the great measurements for going to the dark corners. And if that's a disclaimer, then that's where you have an equivalency problem, isn't it? Well, no, because I disagree with Your Honor respectfully on that point. You're mixing terms. Measuring is one thing. Receiving is another. If the direct light doesn't tell you anything about reflectivity and the darkest area of the room, the fact that it hits that probe, hits that point of information, is irrelevant to the calculation. The microprocessor can take all of that and does into account. You can't practice this invention without somehow determining what your reflected radiation is for all these multiple points of information. And there was no disclaimer here. And if you think about how claim three was amended after this Owenson rejection, he doesn't change anything. He just adds what he tries to tell the examiner is wrong with Owenson. Multiple points external to the device, that's what he adds. That mirrors claim one, and that is not disclaimer. He did not overcome that rejection by disclaiming anything. And I think you have to understand, you start off with a question from the examiner that displays he's got the thing in the wrong spot. And you've got this ever-changing environment, an air tunnel. And that doesn't tell us much about anything in terms of this device, which is all about external points of information. So I would argue, I'm arguing that that is not disclaimer. And I think he almost underscores this lack of disclaimer when you see all of the discussion and his ability to say only, only receives reflected radiation in all of the commentary as he's describing and discussing on this office act, on his response to this rejection, to claims five and 20, because they do incorporate... It seems like you're making the distinction between receiving radiation and measuring radiation. And really what we're talking about here is measuring radiation, correct? Yes, that's the critical function, absolutely. And all you care about, you don't care in this device what the direct radiation is. That doesn't tell you anything. You have to determine a way to measure, to assemble the data that you get from these photodiodes in a way that tells you what the reflected radiation quantity is for all of these various points. And then that processor tells you, okay, that tells me that's the darkest and here's the algorithm and this is what we need now to irradiate it with. So you're right, receiving and measuring are different. And the claims make that very clear in five and 20 when they talk about only receiving the reflected radiation. The disavowing prosecution was to have measuring radiation. No, Your Honor, I think it's receiving. We've never, no one's ever argued that you don't measure the reflected radiation. You have to. You have to figure that out. If you don't do that, this doesn't work. This is not the patent. You must figure out what the reflected radiation is. There was no disclaimer of that. The argument has been because of the reliance on only… The disclaimer was not with the reflected radiation but with the emitted radiation, the direct radiation. I'm sorry, Your Honor, I didn't hear, I didn't hear all your question. It seems to me that the disavow during prosecution was not as to measuring reflected radiation but to whether it actually also measured emitted radiation. No, Your Honor, I don't think anyone can argue that. I think the argument has always been that simply the receipt of direct radiation was enough to put the disclaimer in place because you were receiving direct radiation. That's always been what the fight is about. And that's why this distinction is so important. You can receive direct and indirect reflected radiation, but you must in all instances measure only reflected radiation. There are two groups of claims here, and the second group talks about only receiving reflected. The first group talks about… Can you say that again? I think you just said the point of this was it only measures reflected radiation. At the end of the day, that's right, Your Honor. Well, isn't that the whole problem? No, because… That's your disclaimer. Your device only measures reflected radiation so that any device that measures both doesn't infringe under an equivalency doctrine. No, Your Honor. Well, first of all, the fight has always been that we receive it. What we do with it is basically you can just ignore it. We don't make an attempt to… You don't have to measure it. All you care about is quantifying that reflective light. There's lots of ways, as we point out, and this goes to the measurement concept as well, there's lots of ways you can perform this device. You can have a fixed number for direct and just subtract it out. You can ignore direct. You can do anything you want. But at the end of the day, yes, you have to measure reflected radiation. But the fight has always been if in Claim 1 and 3 we determine that received, and that's what the fight on the Markman, you receive direct and indirect, by definition that is not what it means. You can only receive reflected radiation. That's what the court ruled. I think the error comes because all of the language that she quotes comes from the discussion of 5 and 20, where that was a different set of claims. So, yes, we receive direct, but no, you must measure indirect. That's the critical factor here. How you get there is a multiple number of ways, but at the end of the day, if you don't know that number, you're right. You can't practice this invention. The difference is in Claims 5 and 20, I don't get any direct. I'm still not clear what you're saying. Are you saying that your patent measures only reflected radiation? Yes. And that it disclaims measuring direct radiation? Yes, Your Honor. It doesn't measure it. It doesn't use it. It doesn't use it at all. That's the key here. Because it doesn't provide you with any data that tells you anything about the darkest spot in the room. That's why you do it that way. If you don't do that, it doesn't work. Let me quickly turn to the second argument I make about the claim construction, which is the measurement one. Okay. And that's a short one, Your Honor. I think it's very straightforward. Our position on that is Webster's Dictionary is not a good place to begin for a definition involving a scientific instrument. The best place to start is the specification, and the specification repeatedly talks about data. What is data here? Well, you've got a diode. The diode gets hit with light. Light is energy. It generates energy. That generates voltage. That voltage doesn't tell you anything except it's voltage. You've got to have a processor. It takes that information, it processes it, and ultimately comes up with the dose for the darkest spot in the room. But it's not what they would suggest. This is about data, and this is about determining the quantity of that data so that the microprocessor can use it. It's that simple. Using a Webster's Dictionary definition was simply inappropriate under the circumstances. So for those two reasons, we're arguing that the Markman hearing below was wrong. It imported a negative limitation into the claim, which is not there for claims 1 and 3. And secondly, using Webster's is not the way to determine how you quantify data that's so important in the operation of this invention. Thank you. Thank you, Mr. Treats. Mr. Lorelli. Good morning, Your Honors. May it please the Court. I'm here as a plaintiff that was accused of infringement. And for us, the issue is notice. Notice of the claims, notice in the prosecution history. When you read the patent, you read— It would be helpful to respond to the points that have been made on this appeal. Sure. It raises two issues. The first one was disclaimer. Disclaimer wasn't mentioned by the district court in its claim construction analysis, so it's only on this equivalence point. The equivalence point, there is clearly disclaimer. If we look at the specification, the specification has that disclaimer in it. It says we rely on measurements of reflected radiation rather than direct radiation. That's the essence of how you can tell whether the back of a chair has been sterilized. If that's the case, why do some of the claims talk about receiving reflected radiation and some of the other claims that talk about receiving only reflected radiation? That amendment does seem a little bit fuzzy to me about whether they were disclaiming or receiving direct radiation in the earlier ones. First of all, the issue isn't about receiving. The claims that have receiving only, a lot of them don't have that measuring step. So, if a sensor receives only reflected radiation, of course it's going to measure reflected radiation because that's all it receives. A sensor that receives all types of radiation can't discern which type of radiation it measures. There's no way that I can sit here and say I get light from that wall, 37% of it is reflected and 38% of it is direct. That's impossible by a sensor. That's why when they said receive only, it basically eliminated the need to measure because that's all, the step was taken care of. When there are other claims, particularly Claim 3, it talks about the device which is identical to the OSM reference, identical. It says it receives reflected radiation. That means it can receive direct as well, but there's another limitation. And that limitation is measuring the reflected radiation. And that's something that has never been done by my client's device, has never been pointed to. We can get into the factual record that has changed on appeal and is contradicted below. But in the context of the disclaimer, I don't even know how a disclaimer is all that relevant because the invention, as it's described in the spec, has nothing to do with direct radiation. The prosecution history, of course, tells us it's critical. Measuring reflected radiation is critical, novel, and unique to the device. Well, I mean the equivalency one is the hard case here though. I mean, if the claim construction is correct, and your client's device is clearly out because it measures both, but the equivalency thing seems very hard. I mean, the record's pretty clear. Your client knew very well what this other device was and designed around it. And so it seems in the amount of direct radiation received, I'm not sure it even makes any difference to the functioning. So it is the disclaimer language that troubles me. I have a hard time seeing how the disclaimer language is necessarily all that clear because it doesn't seem to talk specifically only in some of those claims about receiving only reflected radiation. And the receiving only reflected radiation claims, certainly we don't do that, and they really haven't argued equivalence to that as they can't because they edit only. With regards to the measuring, if you think about equivalence, if I'm allowed to receive anything, as the claim states, it says receiving reflected radiation, I can receive direct radiation too. So meet that portion of the claim. But then you have this measurement claim. Something must be done to measure. I understand exactly what you're saying, but what I don't understand is if we assume for like claim three where it doesn't say only receiving reflected radiation, it could receive both, and it measures only the reflected, it seems to me you have to have a disclaimer to get around an equivalency problem for your claim here because it doesn't say it can't receive that. And yours may measure both, but there could be an argument that measuring both, particularly when your device probably doesn't measure very much direct, is equivalent to claim three. Your Honor, if I can separate those. The disclaimer, the prosecution history, talked about a mixture of direct and reflected radiation, which negates the ability to perform what the patent claims are all about. Maybe I can simplify it. Do you think that you have to have the disclaimer be clear to get around the equivalency problem here? Without a disclaimer, you have an equivalency problem that probably has to go to the jury, don't you, on claim three? No, Your Honor, because I don't think that there has been any presentation of a equivalence position that isn't clearly within the statements that were made in the prosecution history. When they make statements in the prosecution history that the use of measurement of total radiation negates the ability to do what this patent was all about, the things that they told the patent office were critical, novel, and the reason why there's patentability here is the fact that we measure total radiation takes us out of any generic equivalence argument. On appeal, they've made these types of arguments. Well, okay, now we're no longer talking about the generic equivalence argument of just measuring total radiation. We're talking about something about how it operates more specifically and things along those lines. Those arguments weren't raised below, and the reason is the record contradicts it. In the general sense, the broad sense, they've lost that broad sense of equivalence, whether it's through disclaimer in the prosecution history, whether it's through disclaimer in the specification, or whether it's through claim vitiation, because in that claim three, there is that step that requires measuring of reflected radiation. But without the disavow, then how are the two devices substantially different? Your Honor, I'm glad you asked that, because I didn't get any play down below. Down below, Luma Lear argued that, oh, the IPT device, 99% of the light that's received is reflected. Therefore, it's equivalent. Their expert not once, but twice recanted those opinions because he said he was wrong. The only evidence down below is that there's about an equal amount of reflected and direct radiation that is received and measured as total radiation. There's a reason why my client's device operates the way it does. It's not pertinent to the arguments that were made below, so it wasn't addressed completely. But what we do is we have a device, it's plugged into the wall, and it has a number of light bulbs, UVC bulbs around it. More than can be powered by the plug into the wall. It's got a battery on board to boost up the power, and the key for our device is efficient use of that power. We want to use that power around the device in the most uniform way possible. That's what our sensors do. They measure the output of the light. Of course, there's going to be some reflected in there, but that gives you a sense of where the device is located. They talk about using measured radiation to assure sterilization effectiveness. We use the sensors to ensure efficient use of our available power around the device. So how does that avoid the claims? The claims require measuring reflected radiation, and many other claims require making determinations based on that calculation. We don't do that at all, Your Honor. Our device is turned off after a predetermined number of hours. But you're measuring output. You just said that the efficiency of your device is that you're keeping track of the output. How do you keep track if you're not measuring? Oh, no. I'm sorry. We are measuring total radiation, the output, and it includes reflected radiation. We're measuring all that. We're measuring the output, just like OSIN. We're not measuring reflected radiation. We're not measuring what Lou Malier told the Patent Office their invention was all about in order to get that claim. It was about sterilizing the back of a chair that you couldn't see. And that's why it had to measure reflected radiation to determine effectiveness of the back of that chair. When we got into this case and obviously started looking at it, we looked through specification, the claims, the prosecution history. Every single one of those items informs this decision. The OSIN reference, I heard an explanation today that was different than I've seen in the years that this case has been going on. The OSIN reference is very much like our device and it's very much like the Lou Malier device. The OSIN reference has a sensor on the top of the device in the control panel that measures output power. And in order to get the claim, claim three specifically, every limitation of claim three was in the OSIN reference except for that last limitation, and that is measuring reflected radiation. And the patentee very clearly and unmistakably said a mixture, meaning total radiation, what we do, negates the ability to determine sterilization effectiveness. I may be paraphrasing that. And it was that same measuring reflected radiation that was described in the same office action as novel, unique, and critical to the operation of the device. I don't know how you can get any more clear and unmistakable of a disclaimer than that to preclude equivalence. But then once we get into equivalence and beyond the specification disclaimers, the prosecution history disclaimers, the claim vitiation, we look at what evidence is there. The evidence that was presented to the district court in equivalence is nothing like what was presented in the appeal brief. But what was presented in the appeal brief was interesting. They said, well, your device can make determinations to find out what the reflected character of the light may be. Their experts said that in passing and in deposition. But then he also admitted later on in that same deposition that there is no baseline that would allow such a determination. The district court evaluated that testimony and said it doesn't matter how the device might be constructed or changed or evaluated by an expert. What matters is what the device does. And the device doesn't measure reflected radiation and doesn't do anything that would be the equivalent of that. Could you address the claim construction issue, especially your opponent's argument regarding the importation of a negative limitation into the claim? Your Honor, the importation of the negative limitation is present in the specification. It's present in the prosecution history. It is a way to understand and explain what reflected radiation is. And the reason why it was important in the district court, and a lot of this record hasn't come up, but you heard Mr. Triggs a little bit talking about indirect radiation. He's now coined a third type of radiation here that isn't anywhere in the record. Because he's trying to argue something that the claim is not. The fact is that reflected radiation has to come off of the items in a room. It can't come off of the device itself. Whether that is done through the negative limitation is one way to do it. Another way to do it would have been to write the claim construction more, it would be longer, it would be more confusing. But you have to define that reflected radiation has to come from items in a room, not from the device itself. It's irrespective whether, if it reflects off of the device, it's still considered direct radiation. It has to be reflected off of a certain area. And that negative limitation was intended to add clarity to the definition. Just turning quickly to the measurement issue that was raised by counsel for Lou Maler. The district court, he criticizes the district court for relying on a dictionary definition. If we look through the district court's analysis, she starts off with the claims. She starts off going through the claims and understanding what measures means in the context of the claims. And measures means quantify. In fact, Lou Maler even agreed that various other limitations of the claims meant quantity. Then she went on to the specification. Then she went on to the prosecution history. She did not simply, oh, there's a definition from a dictionary. Let's take that and rely upon it. The analysis is quite contrary. But measures is one of those words that Phillips teaches us. It's an ordinary word that most people know and understand and simply we're applying the known meaning to that. There were no further questions. Okay. Thank you, Mr. Lurley. Thank you. Mr. Treat. Thank you, Your Honor. One key point. I'm going to say the first thing is, two key points. The first thing is we've heard throughout this case that we practice Owenson. That's wrong. That's dead wrong. That's been the misconception all along. And the way we can work our way through this, and that's all I'm going to do now, and I don't normally do this in an argument, I'm going to read to you from the file history because this is what happened below after the examiner said it's on the outside of the box. Okay. And that's where our sensors are and that's where their sensors are. That is not where Owenson's sensors are as the applicant understood it. Quote, and this is A031 and A032 through 33, and I would urge the court before you render your decision to look at some of these passages again. The probe of Owenson is not shown in the drawings or clearly explained. However, the probe to the degree it is explained measures output power from the tubes so that the control means can govern the rotational speed of the fan. Listen to this. Claim three has been amended requiring that the device receive quote, reflected ultraviolet seed radiation from multiple points directed away and is reflected back. While Owenson measures radiation  quote, to the degree that the location of the probe can be understood, it is measuring radiation from the UV tubes to air that is pulled through the device by the fan. There is no indication that UV radiation reflected from an area surrounding the device is received or measured by that probe. That probe was inside, that single point of information is inside and that is what Owenson teaches and neither of us do that. We both have our probes in virtually the exact same place on the exterior of the device. Thank you, Your Honor. Okay. Thank you, Mr. Triggs and Mr. Lorelli. The case is taken under submission.